LASSER, P.J.T.C.
In this action Holmdel Township, a municipal corporation of the State of New Jersey, contests the determination of the *107 Director of the Division of Taxation denying Holmdel the 1988 payment to which it claims it is entitled pursuant to N.J.S.A. 54:18A~la.b. This statute entitles a municipality to a five-year phaseout of State payments in lieu of insurance company franchise tax when a domestic insurance company relocates its principal office out of the municipality. At issue is whether the relocation of the principal office of Prudential Property and Casualty Insurance Co. (PRUPAC) from Holmdel in 1987, in connection with the redomestication of that company as an Indiana corporation, entitles Holmdel to the statutory phaseout of State payments.
Holmdel’s entitlement to the payments is solely a legal issue, the facts having been stipulated by the parties and the matter having been submitted to the Tax Court upon briefs and oral argument pursuant to R. 8:8-l(b). The stipulated facts follow.
PRUPAC was originally incorporated in New Jersey in 1975, and its principal office was located in Woodbridge. In 1977, its principal office was relocated to Holmdel. Holmdel thereupon became entitled to receive from PRUPAC a portion of PRU-PAC’s franchise tax pursuant to N.J.S.A. 54:18A-13 (repealed 1981). This insurance company franchise tax was deductible from the 2% premiums tax payable by domestic and foreign insurance companies to the State of New Jersey as provided in N.J.S.A. 54:18A-3 as it existed prior to 1981. When the franchise tax was repealed, the State began receiving the funds previously received by municipalities and counties. Concurrently with the repeal, N.J.S.A. 54:18A-la. was enacted, providing for payment to municipalities and counties by the State of New Jersey of amounts in lieu of the repealed franchise tax. Holmdel received such payments from the State through 1987.
In 1983, N.J.S.A. 54:18A-la. was amended to add subsection b., which provides a five-year phaseout of the payments to municipalities in lieu of insurance company franchise tax upon loss of entitlement. This 1983 amendment provides:
b. To ensure that no municipality will experience an abrupt loss of revenue as a result of a domestic insurance company relocating its principal office from the municipality wherein it was established on January 1,1981, the State Treasurer, upon warrant of the State Comptroller, shall, on or before August 1 of each year, pay to the collector of the municipality from which the principal office was removed an amount as hereinafter provided:
*108 (1) For the first year after relocation, an amount equal to 80% of the amount the municipality received in the year in which the relocation occurred;
(2) For the second year after relocation, an amount equal to 60% of the amount the municipality received in the year in which the relocation occurred;
(3) For the third year after relocation, an amount equal to 40% of the amount the municipality received in the year in which the relocation occurred;
(4) For the fourth year after relocation, an amount equal to 30% of the amount the municipality received in the year in which the relocation occurred; and
(5) For the fifth year after relocation, an amount equal to 15% of the amount the municipality received in the year in which the relocation occurred.
No municipality shall be entitled to any payment under this subsection for any year following the fifth year after relocation.
In 1987, PRUPAC changed its legal domicile to the State of Indiana pursuant to the Indiana Redomestication of Insurers Law. This Indiana law recognized the redomesticated corporation as of the date of its incorporation in its original domiciliary state, permitting it to retain all of the rights, titles, assets, liabilities and obligations of the original corporation. PRU-PAC’s redomestication in Indiana was accomplished with the consent of the Commissioner of Insurance of the State of New Jersey.
Although the redomestication in Indiana changed PRUPAC from a domestic New Jersey insurance company to a foreign insurance company, PRUPAC continued to do business from its Holmdel offices.[1] A new corporation, PRUPAC of New Jersey, was created as a subsidiary of the Indiana PRUPAC corporation.
If Holmdel was entitled to receive payments under N.J.S.A. 54:18A-la.b., Holmdel should have received approximately $1,700,000 from the State of New Jersey in 1988.
Holmdel contends that PRUPAC was a domestic insurance company which had maintained its principal office in Holmdel on January 1, 1981 and, in 1987, had relocated its principal office from Holmdel and, therefore, N.J.S.A. 54:18A-la.b. re *109 quires the State of New Jersey to make the five-year phaseout payments to Holmdel as provided in the statute.
The Director argues that PRUPAC ceased to exist as a domestic corporation and, therefore, PRUPAC was not a “a domestic insurance company relocating its principal office from the municipality” because, at the time of the relocation, it was a foreign insurance company by reason of its redomestication.
Holmdel responds that the redomestication and relocation of the principal office were concurrent events and that, at the moment of relocation, PRUPAC was still a domestic corporation and the moment after relocation it became a foreign corporation. Holmdel argues further that, in reality, the domestic corporation did not cease to exist but was taken over by the Indiana corporation on a nunc pro tunc basis as if it had been the same corporation from 1975.
Holmdel further states that it is unable to discover any certificate of dissolution of the 1975 PRUPAC New Jersey corporation, and the Director could shed no light on whether such a certificate of dissolution existed. However, the 1986 domicile transfer plan approved by the New Jersey Commissioner of Insurance provided that PRUPAC New Jersey would surrender its domestic certificate of authority to the New Jersey Department of Insurance and file a certificate of voluntary dissolution under the New Jersey General Corporation Law.
This certificate would “declare that it is filed solely for purposes of terminating any remaining vestiges of PRUPAC’s previous domestic corporate franchise in New Jersey and state that it is not filed for purposes of dissolving or in any manner intended to wind up the affairs of the redomesticated PRUPAC as a continuing insurance corporation domiciled in Indiana which operates in New Jersey under a foreign certificate of authority.”
There are no regulations with respect to the statute in question, and there is no decisional law. Therefore, resolution of the issue is determined by statutory construction. “If the *110 words of the statute plainly convey legislative intent, the court must give effect to the language used by the legislative body.” Franklin Tp. v. Environmental Protect. Dep’t., 7 N.J.Tax 224, 229 (Tax Ct.1984), aff’d 7 N.J.Tax 657 (App.Div.1985). In this case, the intent of the Legislature is clearly set forth in the statute, that is, “to ensure that no municipality will experience an abrupt loss of revenue as a result of the domestic insurance company relocating its principal office from the municipality.”
In carrying out this intent, the Legislature enacted a statutory scheme whereby the State would continue to make payments to municipalities as long as the insurance company maintains its principal office there but, when a domestic insurance company relocates its principal office to another municipality and county, there is no obligation on the State to make in-lieu franchise tax payments to the municipality or county in which the new principal office is located. N.J.S.A. 54:18A-la.a. Therefore, the five-year phaseout relieves the State of an obligation to make in-lieu franchise tax payments at the close of the five-year phaseout period, but evidences an intent by the Legislature to ease the financial burden on certain municipalities by sharing tax revenues collected by the State.
The provision for a phaseout of payments indicates the intent of the Legislature to share the tax revenue with municipalities. However, the fact that there is no provision for a phaseout of payments in the event an insurance company goes out of business indicates that the intent was only to share revenue, not create an additional burden on the State treasury.
The redomestication appears to have been a paper transaction, apparently for the purpose of obtaining some benefit for PRUPAC. PRUPAC continues to maintain a business office in Holmdel, and New Jersey continues to receive tax payments from PRUPAC.[2] However, if, by reason of this transaction, *111 Holmdel were deprived of continued in-lieu franchise tax payments, the municipality would experience an abrupt loss of revenue.
The Director’s argument, that PRUPAC was not a domestic insurance company when it relocated, is technical and contrary to the plain language of the statute. The principal office was relocated “from the municipality.” The exact moment that the domestic company went out of existence is unimportant. The fact that it existed when its principal office was in Holmdel, that the principal office was relocated out of Holmdel, and that the municipality will experience an abrupt loss of revenue as a result of the relocation are controlling.
I conclude that it was not within the contemplation of the Legislature that the redomestication of a domestic New Jersey insurance company, which required moving the principal office to another state, would not only require the municipality to give up annual in-lieu franchise tax payments but also to give up the five-year phaseout provided by the Legislature.
I therefore conclude that the statute requires the State to make the five-year phaseout payments to Holmdel. Judgment will be entered in favor of plaintiff.

Ind. Code Ann. § 27-1-7-4 (Burns 1988) requires that corporations organized or reorganized under Indiana insurance law maintain their "principal office" in Indiana.

As long as PRUPAC Indiana continues to do business in New Jersey, its 2% premiums tax will remain the same because this tax is imposed on both domestic and foreign insurance companies. N.J.S.A. 54:18A-la. However, if it *111 writes its New Jersey insurance through its PRUPAC New Jersey subsidiary, the 2% premiums tax will be imposed on a maximum of 12‘/2% of the worldwide sales of the New Jersey subsidiary and its affiliates, and thus, may have the effect of reducing the tax to be paid to the State of New Jersey. See N.J.S.A. 54:18A-6.